# EXHIBIT A

**PURCHASE AGREEMENT**
**AND**
**JOINT ESCROW INSTRUCTIONS**

Between

**WHEATLAND MARKETPLACE, LLC**

as Seller

and

**ARCITERRA PROPERTIES, LLC**

as Buyer

159064/1

## PURCHASE AGREEMENT
## AND
## JOINT ESCROW INSTRUCTIONS

This Purchase Agreement and Joint Escrow Instructions (this "Agreement") is between WHEATLAND MARKETPLACE, LLC, an Illinois limited liability company ("Seller") and ARCITERRA PROPERTIES, LLC, an Arizona limited liability company or its nominee ("Buyer") to be effective as of April _//_ , 2014 (the "Effective Date"). This Agreement shall constitute the escrow instructions.

### RECITALS:

A.      As of the Effective Date, Seller is the fee title owner of that certain improved property located at SEC 95th Street and Route 59, Naperville, Illinois, as legally described on **Exhibit A** attached hereto and as depicted on **Exhibit B** attached hereto (the "Real Property").

B.      As of the Effective Date, the Real Property is improved with one or more buildings containing approximately 60,427 square feet (collectively, the "Building"). The Building is being leased to tenants (each a "Tenant") in accordance with written leases (each a "Lease"). The Real Property, the Building, the improvements to the Real Property (the "Improvements"), the personal property, if any, of Seller located on the Real Property and Seller's interest in each unexpired Lease (excluding any expired leases where the tenant thereunder continues to occupy space as a holdover or month-to-month tenant) and all rents issued and profits due or to become due thereunder are hereinafter collectively referred to as the "Property."

C.      Buyer desires to purchase the Property from Seller and Seller desires to sell the Property to Buyer free and clear of all liens, all as more particularly set forth in this Agreement.

### AGREEMENTS:

NOW THEREFORE, in consideration of the promises set forth in this Agreement and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Seller and Buyer (the "Parties" or a "Party") hereby agree as follows:

1.      INCORPORATION OF RECITALS.      All of the foregoing Recitals are hereby incorporated as agreements of the Parties.

2.      BINDING AGREEMENT.      This Agreement constitutes a binding agreement, upon Bankruptcy Court Approval, as hereinafter defined, between Seller and Buyer for the sale and purchase of the Property subject to the terms set forth in this Agreement. Subject to the limitations set forth in this Agreement, this Agreement shall bind and inure to the benefit of the Parties and their respective successors and assigns. This Agreement supersedes all other written or verbal agreements between the Parties concerning the transaction embodied in this Agreement. No claim of waiver or modification concerning the provisions of this Agreement shall be made against a Party unless based upon a written instrument signed by such Party.

3.      INCLUSIONS IN PROPERTY.

        (a)      The Property. The term "Property" shall also include the following:

                (1)      All tenements, hereditaments and appurtenances pertaining to the Real Property.

                (2)      All mineral, water and irrigation rights running with or otherwise pertaining to the Real Property.

                (3)      All interest, if any, of Seller in any road adjoining the Real Property, to the center line thereof.

159064/1

(4)    All interest, if any, of Seller in any award made or to be made or settlement in lieu thereof for damage to the Property by reason of condemnation, eminent domain or exercise of police power.

(5)    All of Seller's interest in the Building, the Improvements and any other improvements and fixtures on the Real Property.

(6)    All of Seller's interest in any equipment, machinery and personal property on or used in connection with the Real Property (the "Personalty").

(7)    The Lease and security deposit, if any, now or hereafter due thereunder.

(8)    All of Seller's interest, to the extent transferable, in all permits and licenses (the "Permits"), warranties, contractual rights and intangibles (including rights to the name of the improvements as well as architectural/engineering plans) with respect to the operation, maintenance, repair or improvement of the Property (the "Contracts").

(b)    The Transfer Documents.  Except for the Personalty which shall be transferred by that certain bill of sale from Seller to Buyer, a specimen of which is attached hereto as **Exhibit C** (the "Bill of Sale"), the Lease which shall be transferred by that certain assignment of lease, a specimen of which is attached hereto as **Exhibit D** (the "Assignment of Lease"), the Permits, the approved Contracts which shall be assigned and transferred to Buyer pursuant to an Assignment of Contracts and Warranties in the form attached hereto as **Exhibit F**, and all components of the Property shall be transferred and conveyed by execution and delivery of Seller's special warranty deed, a specimen of which is attached hereto as **Exhibit E** (the "Deed").  The Bill of Sale, the Assignment of Lease, the Assignment of Contracts and Warranties, and the Deed are hereinafter collectively referred to as the "Transfer Documents."

4.    PURCHASE PRICE.  The price to be paid by Buyer to Seller for the Property is Ten Million One Hundred Thirty Two Thousand Nine Hundred and 00/100 Dollars ($10,132,900.00) (the "Purchase Price") payable as follows:

(a)    Twenty Five Thousand and 00/100 Dollars ($25,000.00) earnest money (the "Deposit") to be deposited in escrow with Zodiac Title Services, LLC, attn: Matt Darrah ("Escrow Agent") within three (3) business days after full execution of this Agreement and contemporaneously with the delivery of a fully-executed original of this Agreement to Escrow Agent (the "Opening of Escrow") by Buyer, which Deposit is to be held by Escrow Agent until released to Seller or Buyer as provided herein or paid to Seller at close of escrow ("COE").

(b)    Provided this Agreement has not been terminated as provided for herein, Two Hundred Seventy Five Thousand and 00/100 Dollars ($275,000.00) additional earnest money (the "Additional Deposit") to be deposited in escrow with Escrow Agent within three (3) business days after expiration of the Study Period (as hereinafter defined), which Additional Deposit is to be held by Escrow Agent until released to Seller or Buyer as provided herein or paid to Seller at COE.

(c)    The Purchase Price, less the Earnest Money Deposit (as hereinafter defined), in additional cash, or other immediately available funds, (as may be increased or decreased by such sums as are required to take into account any additional deposits, prorations, credits, or other adjustments required by this Agreement) to be deposited in escrow with Escrow Agent on or before COE (the "Additional Funds") which is to be held by Escrow Agent until cancellation of this Agreement as provided herein or paid to Seller at COE.

5.    DISPOSITION OF DEPOSIT.  Seller and Buyer hereby instruct Escrow Agent to place the Deposit and the Additional Funds, if any, in a federally insured interest-bearing passbook account on behalf of Seller and Buyer.  The Deposit, the Additional Deposit and the Additional Funds actually

158953/1

2

deposited with Escrow Agent are hereinafter referred to as the "Earnest Money Deposit." The Earnest Money Deposit and interest thereon shall be applied as follows:

(a)   If Buyer cancels this Agreement as Buyer is so entitled to do as provided in this Agreement, the Earnest Money Deposit and all interest earned to the effective date of withdrawal shall be paid immediately to Buyer.

(b)   If the Earnest Money Deposit is forfeited by Buyer pursuant to this Agreement, such Earnest Money Deposit and all interest earned to the date of withdrawal shall be paid to Seller as Seller's agreed and total liquidated damages, it being acknowledged and agreed that it would be difficult or impossible to determine Seller's exact damages.

(c)   If escrow closes, the Earnest Money Deposit and all interest earned to COE shall be credited to Buyer, automatically applied against the Price and paid to Seller at COE.

6.   PRELIMINARY TITLE REPORT AND OBJECTIONS.   Within ten (10) days after the Opening of Escrow, Seller shall cause Escrow Agent to deliver a current commitment for owner's policy of title insurance (the "Report") for an ALTA extended coverage title insurance policy (the "Owner's Policy") on the Property to Buyer and Seller. The Report shall show the status of title to the Property as of the date of the Report and shall be accompanied by legible copies of all documents referred to in the Report. The cost of a standard Owner's Policy will be paid for by Seller at COE. Buyer shall pay additional costs for an extended coverage policy. If Buyer is dissatisfied with any exception to title as shown in the Report, then Buyer may provisionally accept the title on or before the expiration of the Study Period (as hereinafter defined), subject to Seller's agreement to cause the removal of any disapproved exceptions or objections, in which case Seller shall (at its sole cost) remove the exceptions or objections (or, if acceptable to Buyer, obtain title insurance endorsements over the exceptions and objections) before COE. Seller shall notify Buyer in writing within five (5) days after receiving Buyer's written notice of disapproval of any exception, if Seller does not intend to remove any such exception. Seller's lack of response shall be deemed as Seller's refusal to remove the objectionable exceptions (or obtain title insurance endorsements over said exceptions and objections, if acceptable to Buyer) prior to COE. In the event the Report is amended to include new exceptions that are not set forth in a prior Report, Buyer shall have until the later of (i) the expiration of the Study Period (as defined below), or (ii) the date ten (10) days after Buyer's receipt of the amended Report and copies of the documents identified in the new exceptions or new requirements, within which to cancel this Agreement and receive a refund of the Earnest Money Deposit plus interest or to provisionally accept the title subject to Seller's agreement to cause the removal of any disapproved exceptions or objections. Unless Seller serves notice to Buyer that Seller does intend to remove such exceptions and objections before COE, then, if Buyer so elects within five (5) business days after the expiration of the Study Period, the Earnest Money Deposit plus interest shall be returned to Buyer upon demand and all obligations shall terminate, or Buyer may waive such objections and the transaction shall close as scheduled. If written notice of dissatisfaction is not given by Buyer to Seller prior to the expiration of the Study Period, then Buyer shall be deemed to have disapproved of the condition of the title of the property as shown by the Report, this Agreement shall be terminated and the Earnest Money shall be promptly returned to Buyer.

7.   BUYER'S STUDY PERIOD.   Buyer shall have until the latest of 5:00 p.m. MST on the thirtieth (30th) day (the "Study Period") after Buyer's receipt of written notice of Bankruptcy Court Approval, as hereinafter defined. Concurrent with execution hereof by Seller, Seller shall deliver to Buyer all of the Due Diligence Materials as defined in Section 8, and as set forth on Exhibit X hereof. All Studies (as defined herein) by Buyer shall be at Buyer's sole cost, which shall include the conducting and approval of any investigations, studies or tests deemed necessary by Buyer, in Buyer's sole discretion, to determine the feasibility of acquiring the Property (the "Studies"). The Studies may include, but not be limited to, Buyer's right to obtain an ALTA survey of the Property ("Survey"), a property condition assessment, a phase I environmental site assessment and to meet and confer with Tenants. Subject to the

prior rights of each Tenant of the Property, Seller hereby grants to Buyer and Buyer's agents, employees and contractors the right to enter upon the Property, at any time or times during the Study Period, to conduct the Studies. In consideration therefor, Buyer shall and does hereby agree to indemnify, defend and hold Seller harmless from any and all liabilities, claims, losses or damages, including, but not limited to, court costs and attorneys' fees, which are incurred by Seller due to the Studies, except any liability, claim, loss or damage arising due to the acts of Seller or its agents or due to Buyer's disclosure of a condition at, on or below the Property not caused by Buyer or its agents. Buyer's indemnity and hold harmless obligation shall survive cancellation of this Agreement or COE. Unless Buyer so notifies Seller or Escrow Agent, in writing, on or before the end of the Study Period of Buyer's acceptance of the Studies and waiver of the contingencies as set forth in this Section 7, this Agreement shall be canceled and the Earnest Money Deposit plus interest shall be returned immediately to Buyer and, except as otherwise provided in this Agreement, neither of the Parties shall have any further liability or obligation under this Agreement.

8.     <u>DELIVERY OF DUE DILIGENCE MATERIALS</u>. Seller agrees to deliver to Buyer, concurrent with Seller execution of the Agreement, all information in Seller's possession or control relating to the leasing, operating, maintenance, construction, repair, zoning, platting, engineering, soil tests, water tests, environmental tests, construction, master planning, architectural drawings and like matters regarding the Property (if any), all at no cost to Buyer (the "Due Diligence Materials"). Without limiting the foregoing, items to be delivered by Seller include (i) complete and true copies of the Leases and any amendments thereto, any surveys of the Property, any existing environmental reports, any construction "close-out" books, construction, materials and equipment warranties and certificates of occupancy. Buyer acknowledges receipt of the Due Diligence Materials by delivery of the Deposit to Escrow Agent. At COE, Seller shall deliver to Buyer the original Leases and any keys for the Property (including lock-box keys).

9.     <u>IRS SECTION 1445</u>. Seller shall furnish to Buyer in escrow by COE a sworn affidavit (the "<u>Non-Foreign Affidavit</u>") stating under penalty of perjury that Seller is not a "foreign person" as such term is defined in Section 1445(f)(3) of the Internal Revenue Code of 1986, as amended (the "<u>Code</u>"). If Seller does not timely furnish the Non-Foreign Affidavit, Buyer may withhold (or direct Escrow Agent to withhold) from the Earnest Money Deposit, an amount equal to the amount required to be so withheld pursuant to Section 1445(a) of the Code, and such withheld funds shall be deposited with the Internal Revenue Service as required by such Section 1445(a) and the regulations promulgated thereunder. The amount withheld, if any, shall nevertheless be deemed to be part of the Price paid to Seller.

10.     <u>DELIVERY OF POSSESSION</u>. Seller shall deliver possession of the Property to Buyer at COE subject only to the rights of Tenant under the Leases, except for Unit 112 at 3224 S. Route 59 (Seller's office - 1,019 s.f.) which Seller may retain for up to three (3) months after COE and except for Units 118 (1,992 s.f.) & 150 (3,200 s.f.) at 3124 S. Route 59 which Seller may retain for up to one (1) month after CEO. At COE, Seller, as tenant and Buyer, as landlord, shall enter into short term, gross leases of the foregoing spaces providing for no rent charges for the term lengths set forth above and rent of $20/SF on any hold-over period thereafter. In the event Buyer leases any of said three units, Seller shall surrender possession of the specified unit to the Buyer upon 30 days written notice to Seller of such Letter of Intent execution on said Unit.

11.     <u>BUYER'S CONDITIONS PRECEDENT</u>. In addition to all other conditions precedent set forth in this Agreement, Buyer's obligations to perform under this Agreement and to close escrow are expressly subject to the following:

(a)     The delivery by Seller to Escrow Agent, for delivery to Buyer at COE, of the executed original Transfer Documents.

158953/1

4

(b)     The deposit by Seller with Buyer prior to COE of executed original estoppel certificates ("Estoppel Certificates") from 82% of existing Tenants, executed by each Tenant verifying the basic facts of the leases (term, rental, expiration date, options, if any exist) and confirming that there are no defaults by the landlord under the Lease, no unperformed or "punchlist" construction items and no unpaid tenant improvement allowances or leasing commissions (the "Landlord Estoppel Matters"). Seller may submit an affidavit regarding the Landlord Estoppel Matters in lieu of Estoppel Certificates for any Tenant not executing an Estoppel Certificate. In the event an Estoppel Certificate (or correspondence delivered therewith) shows a material deviation from the stated terms of the Lease or discloses any Landlord Estoppel Matters (collectively, "Adverse Estoppel Issues), Buyer shall have the right to either terminate this Agreement, whereupon the Earnest Money Deposit shall be returned to Buyer, or extend COE until the third business day after Buyer's receipt of a new Estoppel Certificate showing no Adverse Estoppel Matters.

(c)     Receipt by Buyer of a waiver of any right of first refusal of a Tenant to purchase the Property.

(d)     Buyer's receipt at least one day prior to COE of a subordination, non-disturbance and attornment agreement in a form reasonably acceptable to the Tenants in favor of Buyer's lender;

(e)     If the foregoing conditions have not been satisfied by the specified date or COE as the case may be, then Buyer shall have the right, at Buyer's sole option, by giving written notice to Seller and Escrow Agent, to cancel this Agreement, after a written notice to Seller, and a ten (10) business day cure period, whereupon the Earnest Money Deposit plus interest shall be paid immediately by Escrow Agent to Buyer and, except as otherwise provided in this Agreement, neither of the Parties shall have any further liability or obligation under this Agreement; and

(f)     Written notice from Seller of the entry of an order by the United States Bankruptcy Court, Northern District of Illinois, Eastern Division, in case No. 13-46492, approving the sale of the Property to Buyer on the terms set forth herein (the "Bankruptcy Court Approval") or removal of the Property from and dismissal of said case No. 13-4492.

12.     **SELLER'S WARRANTIES.** Seller hereby represents and warrants to Buyer as of the Effective Date and again as of COE that, to the best of Seller's information and belief:

(a)     There are no leases (other than the Leases delivered to Buyer pursuant to Section 7 and except for the hold-over provisions regarding Units 112, 118 and 150 per Section 10 of this Agreement), liens or encumbrances which may affect title to the Property (except as disclosed in the Report). There is a recorded Operation and Easement Agreement for the Property (the "OEA").

(b)     There are no oral or written agreements between Seller and any Tenant not disclosed by or included in the Leases delivered to Buyer (except Units 112, 118 and 150 as described in Section 10 herein) and Seller has made no concessions to any Tenant except as disclosed in the Leases.

(c)     To Seller's knowledge no notice of violation has been issued with regard to any applicable regulation, ordinance, requirement, covenant, condition or restriction relating to the present use or occupancy of the Property by any person, authority or agency having jurisdiction.

(d)     To the extent Seller or its affiliate is the developer of the Property, the Building and Improvements as constructed meet or exceed all construction requirements under the Leases.

(e)     To Seller's knowledge there is no impending or contemplated condemnation or taking by inverse condemnation of the Property, or any portion thereof, by any governmental authorities.

(f)     There are no suits or claims pending or, to Seller's knowledge, threatened with respect to or in any manner affecting the Property, except claims in the United States Bankruptcy Court, Northern District of Illinois, Eastern Division, in case No. 13-46492.

      (g)     Seller has not entered into and there is no other agreement, written or oral, under which Seller is or could become obligated to sell the Property, or any portion thereof, to a third party.

      (h)     Neither the Building nor any other improvements to the Real Property presently contain or have ever contained drywall material manufactured in or imported from China.

      (i)     Seller has full power and authority to execute, deliver and perform under this Agreement and no consent of any third party is required in order for Seller to enter into this Agreement and perform Seller's obligations hereunder except for the Bankruptcy Court Approval;

      (j)     None of Seller's affiliates, owners, directors or managers, or the immediate family of any thereof, has a direct or indirect interest in any Tenant, except Units 112, 118 and 150.

      (k)     No material default exists under the Lease, other than late payments of rent, and Seller has not received any notice or correspondence from Tenant or its agents indicating Tenant's desire, willingness or intent to amend, modify or terminate a Lease. Between the Effective Date and COE or any earlier termination of this Agreement, Seller shall not execute or enter into any Lease with respect to the Property, or terminate, amend, modify, extend or waive any rights under any Lease without Buyer's prior written consent, which consent may be withheld in Buyer's discretion.

      (l)     To Seller's knowledge, the Real Estate is not contaminated with, nor threatened with contamination from outside sources by, any chemical, material or substance to which exposure is prohibited, limited or regulated by any federal, state, local or regional authority, or which is known to pose a hazard to health and safety, and that the Real Estate has never been used for a land fill, dump site, storage of hazardous substances, underground storage tank or by a manufacturer of any product or for any other industrial use.

All representations made in this Agreement by Seller shall survive the execution and delivery of this Agreement and COE for a period of one year after the COE. Seller shall and does hereby indemnify against and hold Buyer harmless from any loss, damage, liability and expense, together with all court costs and attorneys' fees which Buyer may incur, by reason of any material misrepresentation by Seller or any material breach of any of Seller's warranties. Seller's indemnity and hold harmless obligations shall survive COE for a period of one year after the COE.

     13.    **BUYER'S WARRANTIES**.   Buyer hereby represents to Seller as of the Effective Date and again as of COE that:

      (a)     Buyer has full power and authority to execute, deliver and perform under this Agreement as well as under the Transfer Documents, specimens of which are attached hereto as Exhibits:

      (b)     There are no actions or proceedings pending or to Buyer's knowledge, after due inquiry, threatened against Buyer which may in any manner whatsoever affect the validity or enforceability of this Agreement or any of the documents, specimens of which are attached hereto as Exhibits.

      (c)     The execution, delivery and performance of this Agreement and the Transfer Documents, specimens of which are attached hereto as Exhibits, have not and will not constitute a breach or default under any other agreement, law or court order under which Buyer is a party or may be bound.

      (d)     Should Buyer receive notice or knowledge of any information regarding any of the matters set forth in this Section 14 after the Effective Date and prior to COE, Buyer will immediately notify Seller of the same in writing.

      (e)     All representations made in this Agreement by Buyer shall survive the execution and delivery of this Agreement and COE for a period of one year after COE. Buyer shall and does hereby indemnify against and hold Seller harmless from any loss, damage, liability and expense, together with all

court costs and attorneys' fees, if awarded by a court of law, which Seller may incur, by reason of any material misrepresentation by Buyer or any material breach of any of Buyer's warranties. Buyer's indemnity and hold harmless obligations shall survive COE for a period of one year after COE.

        (f)    Buyer has been advised of the requirement for Bankruptcy Court Approval.

    14.    <u>SELLER COVENANTS</u>. Seller agrees that, between the Effective Date and COE or any earlier termination of this Agreement, Seller shall, at its sole cost:

        (1)    Continue to operate the Property as heretofore operated by Seller subject to Buyer's rights under this Agreement to direct specific activities of Seller and subject to the OEA.

        (2)    Maintain, subject to the OEA, or, if applicable, cause the Tenants to maintain the Property in its current condition and perform required and routine maintenance and make replacements of the Property that are tangible property (whether real or personal) and perform repairs or make replacements to any broken, defective or disfunctioning portions of the Property that are tangible property (whether real or personal) as the relevant conditions require.

        (3)    Pay any free rent and brokers' commissions provided for in or resulting from the Lease shall be paid by Seller on or prior to COE.

        (4)    Comply or, if applicable, cause the Tenants to comply with all governmental requirements applicable to the Property.

        (5)    Except as required by a governmental agency, not place or permit to be placed on any portion of the Real Property any new improvements of any kind or remove or permit any improvements to be removed from the Real Property without the prior written consent of Buyer.

        (6)    Not restrict, rezone, file or modify any development plan or zoning plan or establish or participate in the establishment of any improvement district with respect to all or any portion of the Real Property without Buyer's prior written consent.

        (7)    Without Buyer's prior written consent, Seller shall not, by voluntary or intentional act or omission to act, further cause or create any easement, encumbrance, or mechanic's or materialmens' liens, and/or similar liens or encumbrances to arise or to be imposed upon the Property or any portion thereof that effects title thereto.

        (8)    Notify Buyer of (i) any material default by Tenant under the Lease, or (ii) any notice or correspondence received from Tenant or its agents indicating Tenant's desire, willingness or intent to amend, modify or terminate the Lease. The Kosta's Mediterranean Restaurant Lease terminated on January 31, 3014 and will be vacated on or about April 30, 2014.

        (9)    Prior to COE or any earlier termination of this Agreement, Seller will not enter into or execute any employment, management or service contract with respect to the Real Property without Buyer's prior written consent, which consent shall not be unreasonably withheld.

        (10)    Except for any item to be prorated at COE in accordance with this Agreement, all bills or other charges, costs or expenses arising out of or in connection with or resulting from Seller's use, ownership, or operation of the Property up to COE (including real estate taxes and assessments due per Estoppel Agreements for prior years) shall either be paid in full by Seller or credited to Buyer by Seller.

    15.    <u>BROKER'S COMMISSION</u>. Concerning any brokerage commission, the Parties warrant to one another that they have not dealt with any finder, broker or realtor in connection with this Agreement other than Edgemark Commercial Real Estate Services, LLC ("Seller's Agent"). If any other

person shall assert a claim to a finder's fee or brokerage commission on account of alleged employment as a finder or broker in connection with this Agreement, the Party under whom the finder or broker is claiming shall indemnify and hold the other Party harmless from and against any such claim and all costs, expenses and liabilities incurred in connection with such claim or any action or proceeding brought on such claim, including, but not limited to, counsel and witness fees and court costs in defending against such claim. If, but only if the transaction contemplated herein closes in the manner provided for herein, Seller shall pay all fees and commissions owing to Seller's Agent in connection with the transaction contemplated by this Agreement. The provisions of this Section shall survive cancellation of this Agreement or COE.

16.    <u>CLOSE OF ESCROW</u>. COE shall be on or before 5:00 p.m. MST on the thirtieth (30th) day after the expiration of the Study Period. If any notice or correspondence regarding the Property is received by Seller on or after COE, including, without limitation, any Tenant notice, condemnation notice, tax valuation notice, lien notice, or tax bill, Seller shall promptly forward the same to Buyer. Buyer shall thereafter give to the notifying party the correct address of the Property owner. Nothing in this Section 16 shall limit any obligation of Seller to disclose information regarding the Property prior to COE pursuant to any other provision of this Agreement. The provisions of this Section 16 shall survive COE.

17.    <u>ASSIGNMENT</u>. This Agreement may not be assigned by Seller without the prior written consent of Buyer which consent shall not be unreasonably withheld. Buyer may assign its rights under this Agreement to an affiliate controlled by, controlling or under common control with Buyer without Seller's consent, provided that Buyer shall promptly provide a copy of any such assignment to Seller.

18.    <u>RISK OF LOSS</u>. Seller shall bear all risk of loss, damage or taking of the Property which may occur prior to COE. In the event of any loss, damage or taking prior to COE, Buyer may, at Buyer's sole option, by written notice to Seller and Escrow Agent, cancel this Agreement whereupon the Earnest Money Deposit plus interest shall be paid immediately by Escrow Agent to Buyer and, except as otherwise provided in this Agreement, neither of the Parties shall have any further liability or obligation hereunder. In the alternative, Buyer may attempt to negotiate an appropriate downward adjustment of the Price. If Seller, subject to Bankruptcy Court Approval if necessary, and Buyer cannot agree upon such a downward adjustment within a reasonable period (not to exceed ten (10) days from the date Buyer receives notice of the loss) Buyer may cancel this Agreement as provided above. If Buyer waives any such loss or damage to the Property and closes escrow, Seller shall at COE and as a condition precedent thereto, pay Buyer or credit Buyer against the Additional Funds the amount of any insurance or condemnation proceeds, or assign to Buyer, as of COE and in a form acceptable to Buyer, all rights or claims for relief to the same.

19.    REMEDIES. If Seller breaches this Agreement, Buyer may, at Buyer's sole option, and as Buyer's sole and exclusive remedies, either: (i) by written notice to Seller and Escrow Agent, cancel this Agreement whereupon the Earnest Money Deposit plus interest shall be paid immediately by Escrow Agent to Buyer and, except as otherwise provided in this Agreement, neither of the Parties shall have any further liability or obligation hereunder; or, (ii) seek specific performance against Seller in which event COE shall be automatically extended as necessary. In no event shall Buyer have any claim or action against Seller for any monetary damages arising out of the failure of Seller to close. Notwithstanding the foregoing, Buyer shall have all remedies available at law or equity in the event Buyer becomes aware of a breach of a representation, warranty or covenant of Seller hereunder after COE. If Buyer breaches this Agreement after the expiration of the Study Period, as its sole remedy Seller shall be entitled to retain the Earnest Money Deposit in accordance with subsection 5(b) as Seller's agreed and total liquidated damages. Seller hereby waives any right to seek any equitable or legal remedies against Buyer, provided that nothing herein shall limit Buyer's indemnity obligations pursuant to Section 7. The provisions of this Section 19 shall survive COE.

20.    ATTORNEYS' FEES. If there is any litigation to enforce any provisions or rights arising herein in accordance with Section 20, the unsuccessful party in such litigation, as determined by the court, agrees to pay the successful party, as determined by the court, all costs and expenses, including, but not limited to, reasonable attorneys' fees incurred by the successful party, such fees to be determined by the court.

21.    NOTICES.

(a)    Addresses. Except as otherwise required by law, any notice required or permitted hereunder shall be in writing and shall be given by personal delivery, or by deposit in the U.S. Mail, certified or registered, return receipt requested, postage prepaid, addressed to the Parties at the addresses set forth below, or at such other address as a Party may designate in writing pursuant hereto, or tested fax number, or Email address, or any express or overnight delivery service (e.g., Federal Express), delivery charges prepaid:

| | |
|---|---|
| if to Seller: | Wheatland Marketplace, LLC<br>2316 Fawn Lake Circle<br>Naperville, IL 60564<br>Attention: Paul J. Lehman, Manager<br>Tel: 630-651-5263<br>Fax: 630-904-4848<br>Email: plehman@frontgateprop.com |
| with a copy to: | Dommermuth, Cobine, West, Gensler, Philipchuck,<br>    Corrigan & Bernhard, Ltd.<br>111 E. Jefferson Ave., Suite 200<br>Naperville, IL 60540<br>Attention: Craig J. Cobine, Esq.<br>Tel: 630-355-5800<br>Fax: 630-355-5976<br>Email: cjc@dbcw.com |
| if to Buyer: | ArciTerra Properties, LLC<br>2720 East Camelback Road<br>Suite 220<br>Phoenix, Arizona 85016<br>Attention: Jonathan M. Larmore<br>Tel: (602) 840-6800 |

158953/1

Fax: (866) 358-8326
Email: jon.larmore@ArciTerra.com

with a copy to:                    Blaine D. Rice, Esq.
                                   2720 E. Camelback Road
                                   Suite 220
                                   Phoenix, Arizona 85016
                                   Tel:  602.424.7557
                                   Fax: 602.956.4494
                                   Email: blaine_rice@me.com

if to Escrow Agent:                Zodiac Title Services, LLC
                                   300 Broadhollow Road
                                   Melville, NY 11747
                                   Attention: Matt Darrah
                                   Tel: 631-377-4081
                                   Email: mdarrah@ztitle.com

(b)     Effective Date of Notices. Notice shall be deemed to have been given on the date on which notice is delivered, if notice is given by personal delivery, facsimile or e-mail message (provided there is confirmation of delivery of the facsimile or email message), and on the date of deposit in the mail, if mailed or deposited with the overnight carrier, if used. Notice shall be deemed to have been received on the date on which the notice is received, if notice is given by personal delivery, and on the second (2nd) day following deposit in the U.S. Mail, if notice is mailed. If escrow has opened, a copy of any notice given to a party shall also be given to Escrow Agent by regular U.S. Mail or by any other method provided for herein.

22.     ESCROW INSTRUCTIONS; REPORTING PERSON. This Agreement shall constitute the "Escrow Instructions". The Escrow Agent is hereby designated as the "real estate reporting person" for purposes of Section 6045 of Title 20 of the United States Code and Treasury Regulation 1.6045-4 and any instructions or settlement statement prepared by Escrow Agent shall so provide. Upon consummation of the transaction contemplated by this Agreement, Escrow Agent shall file the Form 1099 informational return and send the statement to Seller as negotiated under the aforementioned statute and regulation.

23.     CLOSING COSTS; PRORATIONS.

(a)     Closing Costs. Seller and Buyer agree to pay closing costs as indicated in this Agreement. At COE, Seller shall pay (i) the costs of releasing all liens, judgments, and other encumbrances that are to be released and of recording such releases, (ii) one-half of the fees and costs due Escrow Agent for its services, (iii) the State and County transfer taxes associated with the sale of the Property, (iv) any costs or fees payable to any warrantor associated with the assignment of construction, materials or equipment warranties pursuant to this Agreement, and (v) all other costs to be paid by Seller under this Agreement. At COE Buyer shall pay (i) one-half of the fees and costs due to Escrow Agent, (ii) the City of Naperville transfer tax required by ordinance to be paid by Buyer, (iii) any costs associated with Buyer's loan on the Property (if any), including mortgage taxes associated therewith and (iv) all other costs to be paid Buyer under this Agreement. Except as otherwise provided for in this Agreement, Seller and Buyer will each be solely responsible for and bear all of their own respective expenses, including, without limitation, expenses of legal counsel, accountants, and other advisors incurred at any time in connection with pursuing or consummating the transaction contemplated herein. Any other closing costs not specifically designated as the responsibility of either Party in this Agreement shall be paid by Seller and Buyer according to the usual and customary allocation of the same by Escrow Agent.

158953/1

(b)    Base rent for the month in which COE occurs shall be prorated. At COE Seller shall receive a credit for: (i) the actual amount of utilities and other operating expenses of the Property paid for the period from the first day of the year in which COE occurs through the day prior to COE, and (ii) real estate taxes paid applicable to the Property for the period from the earlier of the first day of the year in which COE occurs or the date of the most recent, unpaid tax bill for the Property through the day prior to COE (if no real estate taxes have been paid for such period, then taxes shall be prorated based on the most recent information available). At COE Buyer shall receive a credit for (i) rents collected by Seller under the Lease for the period from the first day of the year in which COE occurs through the day prior to COE applicable to common area maintenance expenses, insurance expenses and taxes (whether or not designated as "rents" in the Lease, but excluding Delinquent Rents as defined and addressed separately below), (ii) the total amount of any prepaid rents collected by Seller and (iii) Vacant Space Additional Rent (as hereinafter defined), if any. Seller shall provide to Buyer and Escrow Agent such information as is reasonably necessary (including copies of invoices and bills) to perform such prorations and credits at least three (3) business days prior to COE. After COE, Buyer will pay to Seller in cash the pro rata portion of any rents that are not past due collected by Buyer after COE and which related to the period prior to COE, and such payments shall be made to Seller within five (5) business days after Buyer's receipt of same. To the extent Seller receives any rents after COE which are applicable to the period after COE, Seller shall forward such payments to Buyer within five (5) business days after Seller's receipt of same.

(c)    If information required to calculate any such proration is not available to Seller and Buyer at COE, the same shall be prorated at COE on the basis of the best estimates then available. All prorations shall be final.

(d)    Seller shall be solely responsible for and shall pay or reimburse (as applicable) Buyer for (i) all actual common area maintenance, insurance and taxes applicable to any vacant space at the Property for all or any portion of the period from the first day of the year in which COE occurs through the day before COE ("Vacant Space Additional Rent") and (ii) any amount for which Seller receives a credit at COE applicable to common area maintenance, insurance and taxes for all or any portion of the period from the first day of the year in which COE occurs through the day before COE which is not reimbursable under the Lease.

24.    APPROVALS.  Concerning all matters in this Agreement requiring the consent or approval of any Party, the Parties agree that any such consent or approval shall not be unreasonably withheld unless otherwise provided in this Agreement.

25.    PROHIBITED PERSONS.  Buyer and Seller each represent and warrant to the other that neither it nor any of its respective officers, directors, shareholders, partners, members or affiliates (including without limitation direct holders of equity interests in Buyer or Seller, as applicable) is or will be an entity or person (i) that is listed in the Annex to, or is otherwise subject to the provisions of Executive Order 13224 issued on September 24, 2001 ("EO13224"), (ii) whose name appears on the United States Treasury Department's Office of Foreign Assets Control ("OFAC") most current list of "Specifically Designated National and Blocked Persons" (which list may be published from time to time in various mediums including, but not limited to, the OFAC website, http:www.treas.gov/ofac/t11sdn.pdf) (iii) who commits, threatens to commit or supports "terrorism", as that term is defined in EO3224, (iv) is subject to sanctions of the United States government or is in violation of any federal, state, municipal or local laws, statutes, codes, ordinances, orders, decrees, rules or regulations relating to terrorism or money laundering, including, without limitation, EO13224 and the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, or (v) who is otherwise affiliated with any entity or person listed above (any and all parties or persons described in clauses (i) – (v) above are herein referred to as a "Prohibited Person"). Buyer covenants and agrees that neither Buyer nor any of its respective officers, directors, shareholders, partners, members or affiliates

(including without limitation indirect holders of equity interests in Buyer) shall (aa) conduct any business, nor engage in any transaction or dealing, with any Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods, or services, to or for the benefit of a Prohibited Person, or (bb) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in EO13224. Seller covenants and agrees that neither Seller nor any of its officers, directors, shareholders, partners, members or affiliates (including without limitation direct holders of equity interests in Seller) shall (aa) conduct any business, nor engage in any transaction or dealing, with any Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods, or services, to or for the benefit of a Prohibited Person, or (bb) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in EO13224. The provisions of this Section shall survive Closing or termination of this Agreement.

26.    ADDITIONAL ACTS. The Parties agree to execute promptly such other documents and to perform such other acts as may be reasonably necessary to carry out the purpose and intent of this Agreement.

27.    GOVERNING LAW/JURISDICTION/VENUE. This Agreement shall be governed by and construed or enforced in accordance with the laws of the State of Illinois in which the Property is located.

28.    CONSTRUCTION. The terms and provisions of this Agreement represent the results of negotiations among the Parties, each of which has been represented by counsel of its own choosing, and neither of which has acted under any duress or compulsion, whether legal, economic or otherwise. Consequently, the terms and provisions of this Agreement shall be interpreted and construed in accordance with their usual and customary meanings, and the Parties each hereby waive the application of any rule of law which would otherwise be applicable in connection with the interpretation and construction of this Agreement that ambiguous or conflicting terms or provisions contained in this Agreement shall be interpreted or construed against the Party whose attorney prepared the executed Agreement or any earlier draft of the same.

29.    TIME OF ESSENCE. Time is of the essence of this Agreement. However, if this Agreement requires any act to be done or action to be taken on a date which is a Saturday, Sunday or legal holiday, such act or action shall be deemed to have been validly done or taken if done or taken on the next succeeding day which is not a Saturday, Sunday or legal holiday, and the successive periods shall be deemed extended accordingly.

30.    INTERPRETATION. If there is any specific and direct conflict between, or any ambiguity resulting from, the terms and provisions of this Agreement and the terms and provisions of any document, instrument or other agreement executed in connection herewith or in furtherance hereof, including any Exhibits hereto, the same shall be consistently interpreted in such manner as to give effect to the general purposes and intention as expressed in this Agreement which shall be deemed to prevail and control.

31.    HEADINGS AND COUNTERPARTS. The headings of this Agreement are for reference only and shall not limit or define the meaning of any provision of this Agreement. This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which shall constitute one and the same instrument.

32.    INCORPORATION OF EXHIBITS BY REFERENCE. All Exhibits to this Agreement are fully incorporated herein as though set forth at length herein.

33.    SEVERABILITY. If any provision of this Agreement is unenforceable, the remaining provisions shall nevertheless be kept in effect.

158953/1

34.     SECTION 1031 EXCHANGE.  At the request of either party, Buyer and Seller agree to reasonably cooperate with the other and Escrow Agent in structuring and documenting the sale of the Real Estate to effect a tax deferred exchange in accordance with the provisions of Section 1031 of the Internal Revenue Code and its corresponding regulations.  Such cooperation shall be at nominal cost to the other party.  In no event shall such cooperation require a delay of the Closing.

35.     ENTIRE AGREEMENT.  This Agreement contains the entire agreement between the Parties and supersedes all prior agreements, oral or written, with respect to the subject matter hereof.  The provisions of this Agreement shall be construed as a whole and not strictly for or against any Party.

*[signature page(s) immediately follow]*

158953/1

Buyer and Seller, intending to be legally bound, have caused this Purchase Agreement and Escrow Instructions to be executed by their duly authorized representatives.

SELLER:                          WHEATLAND MARKETPLACE, LLC
                                 an Illinois Limited liability company

                                 By: _____
                                 Name: Paul J. Lehman
                                 Its: Manager


BUYER:                           ARCITERRA PROPERTIES, LLC
                                 an Arizona limited liability company

                                 By: ArciTerra Group, LLC,
                                 an Arizona limited liability company,
                                 its Manager


                                 By: _____
                                     Jonathan M. Larmore, Manager


ESCROW AGENT'S ACCEPTANCE

        The foregoing fully executed Agreement is accepted by the undersigned on the _____ day of April, 2014, which for the purposes of this Agreement shall be deemed to be the date of Opening of Escrow.

ESCROW AGENT:                    ZODIAC TITLE SERVICES, LLC


                                 By: _____
                                 Name: _____
                                 Title: _____


158953/1

14

## EXHIBIT A

### LEGAL DESCRIPTION OF REAL PROPERTY

PIN:   07-01-10-101-010      Common Address:      3124 S. Route 59, Naperville, IL

Lot 4 in Koroluk Lot 4 Resubdivision, being a part of the Northwest Quarter of Section 10, Township 37 North, Range 9, East of the Third Principal Meridian, according to the Plat thereof recorded August 7, 2001 as Document No. R2001-102766, in Will County, Illinois.

PIN:   07-01-10-101-005      Common Address:      3204 S. Route 59, Naperville, IL

Lot 5 in Koroluk Subdivision, being a Subdivision of part of the Northwest Quarter of Section 10, Township 37 North, Range 9, East of the Third Principal Meridian, according to the Plat thereof recorded June 29, 1998 as Document No. R98-74104, in Will County, Illinois.

PIN:   07-01-10-101-013-1001      Common Address:      3224 S. Route 59, Naperville, IL

Unit A in Wheatland Marketplace Lot 7 Condominium, as delineated on a Plat of Survey of the following described Tract of Land:  Lot 7 in Koroluk Lot 4 Resubdivision of the Northwest Quarter of Section 10, Township 37 North, Range 9, East of the Third Principal Meridian, according to the Plat thereof recorded June 29, 1998 as Document No. R98-74104, in Will County, Illinois, which Plat of Survey is attached as Exhibit "A" to the Declaration of Condominium recorded September 2, 2003 as Document R2003-216485, and as Amended and Restated by Instrument Recorded June 11, 2004 as Document R2004-105649; together with its Undivided Percentage Interest in the Common Elements.

PIN:   07-01-10-101-013-1002      Common Address:      3224 S. Route 59, Naperville, IL

Unit B in Wheatland Marketplace Lot 7 Condominium, as delineated on a Plat of Survey of the following described Tract of Land:  Lot 7 in Koroluk Lot 4 Resubdivision of the Northwest Quarter of Section 10, Township 37 North, Range 9, East of the Third Principal Meridian, according to the Plat thereof recorded June 29, 1998 as Document No. R98-74104, in Will County, Illinois, which Plat of Survey is attached as Exhibit "A" to the Declaration of Condominium recorded September 2, 2003 as Document R2003-216485, and as Amended and Restated by Instrument Recorded June 11, 2004 as Document R2004-105649; together with its Undivided Percentage Interest in the Common Elements.

159064/1

## EXHIBIT B

### REAL PROPERTY DEPICTION



159064/1

**EXHIBIT C**

BILL OF SALE

This Bill of Sale is made and entered into as of _____, 2014, by and between Wheatland Marketplace, LLC, an Illinois limited liability company ("Seller") and Arciterra Properties, LLC, an Arizona limited liability company ("Buyer"), and provides as follows:

WHEREAS, Seller and Buyer entered into a Purchase Agreement dated as of _____, 2014 (the "Agreement"), pursuant to which Seller agreed to sell to Buyer certain real property and personal property located at 3124, 3204 & 3224 S. Route 59, Naperville, Illinois, which is more particularly described on **Exhibit A** attached hereto and made a part hereof (the "Property"); and

WHEREAS, Seller possesses various items of personal property located in or on the Property and used in the operation of the Property, which may include, without limitation, furniture, furnishings, equipment, fixtures, inventory, machinery, supplies and other personal property (the "Personal Property"). The Agreement contemplates that all of the Personal Property shall be transferred and assigned by Seller to Buyer; and

WHEREAS, Seller desires to transfer and convey all of its right, title and interest in and to the Personal Property to Buyer, and Buyer desires to accept the transfer and conveyance of the Personal Property;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Seller and Buyer covenant and agree as follows:

1.      Transfer and Assignment.  Seller hereby transfers and conveys to Buyer all of the right, title and interest of Seller in and to the Personal Property. Buyer accepts the transfer and conveyance of the right, title and interest of Seller in and to the Personal Property.

2.      Representations and Warranties of Seller.  Seller represents and warrants to Buyer that (a) it possesses good and marketable title to the Personal Property, (b) the Personal Property is free and clear of all security interests, liens, title retention agreements and other encumbrances, except that certain of the leasehold improvements included in the Personal Property may be subject to the provisions of the lease(s) between Seller and the tenant(s) of the Property, and (c) it possesses full right, power and authority to transfer and assign the Personal Property to Buyer.

3.      Condition of the Personal Property.  All of the Personal Property is transferred from Seller to Buyer "as is." Seller makes no implied warranty of merchantability and no warranty, either express or implied, concerning the Personal Property, except for the representations and warranties contained in this Bill of Sale or in the Agreement, if any.

4.      Counterparts.  The parties agree that this Bill of Sale may be executed by the parties in one or more counterparts and each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

159064/1

IN WITNESS WHEREOF, Seller and Buyer have executed this Bill of Sale as of the date set forth above.

SELLER:

Wheatland Marketplace, LLC,
an Illinois limited liability company

By:_____
Name: Paul J. Lehman
Title: Manager

BUYER:

Architerra Properties, LLC,
a Arizona limited liability company

By:_____
Name:_____
Title:_____

158953/1

**EXHIBIT A TO
BILL OF SALE**

**LEGAL DESCRIPTION**

EXHIBIT D

ASSIGNMENT AND ASSUMPTION
OF
LEASE

This Assignment and Assumption of Lease (the "Assignment"), dated as of _____ (the "Effective Date"), is by and between _____, a _____ corporation ("Assignor") and _____, LLC, an Arizona limited liability company ("Assignee").

RECITALS:

Assignor is presently the holder of the lessor's interest under the lease, as amended (collectively, the "Lease") listed on **Exhibit A** attached hereto and by this reference incorporated herein. The Lease affects the real property described on **Exhibit B** attached hereto.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee agree as set forth below.

AGREEMENT:

1.  Assignment. Assignor hereby assigns, conveys, transfers and sets over unto Assignee all of Assignor's right, title and interest in, to and under the Lease, including, without limitation, all of Assignor's right, title and interest in and to security, cleaning or other deposits and in and to any claims for rent, arrears rent or any other claims arising under the Lease against any lessee thereunder, subject to the rights of the lessees under the Lease.

2.  Assumption. Assignee hereby assumes and agrees to pay all sums, and perform, fulfill and comply with all covenants and obligations, which are to be paid, performed, fulfilled and complied with by the lessor under the Lease following the Effective Date.

3.  Assignee's Indemnification or Assignor. Assignee shall and does hereby indemnify Assignor against, and agrees to hold Assignor harmless of and from, all liabilities, obligations, actions, suits, proceedings or claims, and all costs and expenses, including but not limited to reasonable attorneys' fees, incurred in connection with the Lease, based upon or arising out of any breach or alleged breach of the Lease by Assignee occurring or alleged to have occurred after the Effective Date.

4.  Assignor's Indemnification or Assignee. Assignor shall and does hereby indemnify Assignee against, and agrees to hold Assignee harmless of and from, all liabilities, obligations, actions, suits, proceedings or claims, and all costs and expenses, including but not limited to reasonable attorneys' fees, incurred in connection with the Lease, based upon or arising out of any breach or alleged breach of the Lease by Assignor occurring or alleged to have occurred on or prior to the Effective Date for a period of one year after the date of this Assignment.

5.  Binding Effect. This Assignment shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

159064/1

Assignor and Assignee intending to be legally bound, have caused this Assignment to be executed by its duly authorized representatives as of the date set forth above.

ASSIGNOR:          _____,

                                    a(n) _____ _____

                                    By:_____
                                    Name:_____
                                    Title:_____

ASSIGNEE:          _____, LLC,

                                    an Arizona limited liability company

                                    By:_____
                                    Name:_____
                                    Title:_____

**EXHIBIT A TO
ASSIGNMENT OF LEASE**

**Lease Description**

**LANDLORD:** _____
_____
_____

**TENANT:** _____
_____
_____

**DATE:** _____

**PREMISES:** _____

**TERM:** Commencing on _____
and ending on _____.

158953/1

**EXHIBIT B TO
ASSIGNMENT OF LEASE**

<u>**Property Description**</u>

**EXHIBIT E**

**WHEN RECORDED MAIL TO:**

_____
_____
_____
_____

WARRANTY DEED

For the consideration of Ten Dollars ($10.00), and other valuable considerations, _____, a _____ corporation ("Grantor") hereby conveys to _____, _____ a(n) _____ _____ ("Grantee"), the following described real property situated in_____, together with all rights and privileges appurtenant thereto:

See legal description set forth in **Exhibit A** attached and incorporated by this reference (the "Property").

SUBJECT TO those permitted exceptions set forth in **Exhibit B** attached and incorporated by this reference.

Grantor warrants the title to the Property against all acts of the Grantor herein and no other subject to the matters set forth above.

Dated this _____ day of _____, 200___.

GRANTOR:

_____
a _____

By:_____
Name:_____
Title:_____

State of _____)
                        ) ss:
County of _____)

This instrument was acknowledged and executed before me this _____ day of _____, 200__, by _____.

My Commission Expires:            _____
                                   Notary Public

159064/1

**EXHIBIT A TO
DEED**

**Legal Description**

159064/1

**EXHIBIT B TO
DEED**

**Permitted Exceptions**

159064/1

**EXHIBIT F**

ASSIGNMENT OF CONTRACTS AND WARRANTIES

THIS ASSIGNMENT OF CONTRACTS AND WARRANTIES (this "Assignment")is dated as of _____ between _____, ("Seller") and ARCITERRA _____, LLC, an Arizona limited liability company, 2720 East Camelback Road, Suite 220, Phoenix, Arizona 85016 ("Buyer").

WHEREAS, the Seller is to sell and convey to Buyer the real property located at _____, being described on Exhibit A, attached hereto and made a part hereof by reference (the "Property"), and

WHEREAS, there are certain permits and licenses, warranties, service contracts, construction contracts, development agreements, development rights, plans and specifications, joint development agreements, plats, approvals, entitlements, contractual rights, intangibles (including rights to the name of the improvements and property as well as architectural/engineering plans) and similar documents and rights with respect to the development (past, present and future), operation, maintenance, repair or improvement of the Property (the "Contracts and Warranties")

NOW, THEREFORE, WITNESSETH:

For Value Received, Seller does hereby assign, transfer, and set over to, Buyer, all of Seller's right, title and or interest in and to the Contracts and Warranties, including, but not limited to those set forth on the attached Exhibit B.

Buyer hereby assumes and agrees to pay all sums, and perform, fulfill and comply with the assigned Contracts and Warranties, which are to be paid, performed, fulfilled and complied with following the Effective Date.

Buyer shall and does hereby indemnify Seller against, and agrees to hold Seller harmless of and from, all liabilities, obligations, actions, suits, proceedings or claims, and all costs and expenses, including but not limited to reasonable attorneys' fees, incurred in connection with the Contracts and Warranties, based upon or arising out of any breach or alleged breach of the Contracts and Warranties by Buyer occurring or alleged to have occurred after the Effective Date for a period of one year after the date of this Assignment.

Seller shall and does hereby indemnify Buyer against, and agrees to hold Buyer harmless of and from, all liabilities, obligations, actions, suits, proceedings or claims, and all costs and expenses, including but not limited to reasonable attorneys' fees, incurred in connection with the Contracts and Warranties, based upon or arising out of any breach or alleged breach of the Contracts and Warranties by Seller occurring or alleged to have occurred on or prior to the Effective Date.

This Assignment shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

This Assignment may be executed in counterparts.

SELLER:                                      BUYER:

159064/1

ArciTerra _____, LLC,
an Arizona limited liability company

By: _____
Name: _____
Its: _____

By: ArciTerra Group, LLC
an Arizona limited liability company
Its: Manager

By: _____
    Jonathan M. Larmore, Manager

159064/1

**EXHIBIT A**
To Assignment of Contracts and Warranties
Legal Description

EXHIBIT B
To Assignment of Contracts and Warranties

159064/1

EXHIBIT X
THE DUE DILIGENCE MATERIALS DELIVERED TO BUYER WITH EXECUTION OF THE
PURCHASE AGREEMENT CONSIST OF THE FOLLOWING:

1)   All Leases

2)   Existing A.L.T.A. Surveys on all of the Property

3)   Security Deposit Report

4)   Operating And Easement Agreement for Wheatland Marketplace Subdivision

5)   CAM, Insurance and Real Estate Tax Reconciliation for Jan-Mar 2014

6)   Landscaping Contract for 2014

7)   Alarm Monitoring Contract

8)   HVAC Maintenance Contract

9)   Snow Removal Contract for 2013-2014 (Expired)

10)  Parking Lot Cleaning Contract

11)  CAM, Insurance and Real Estate Tax Reports for the calendar years 2013 and 2014

12)  Current Rent Roll

13)  Current and Prior Four Year Real Estate Tax Records

14)  CAM, Insurance and Real Estate Tax Reconciliations for calendar year 2014

15)  Operating Agreement for Wheatland Marketplace Lot 7 Condominium Association

16)  Property operating statements for the years 2011, 2012 and 2013

17)  Seller's or Seller's lender's existing phase I environmental site assessment (if available)

159064/1